UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KEISHA ALLEN, et al., | ) |
| Plaintiffs, | ) |
| vs. | ) Case No. 4:14-CV-178 (CEJ) |
| BAYER HEALTHCARE PHARMACEUTICALS, INC., | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant's motion to stay and plaintiffs' motion to remand and request for expedited consideration. The issues are fully briefed.

**I.**    **Background**

On February 5, 2013, twenty-five plaintiffs filed this products liability action in the Circuit Court for the Twenty-Second Judicial Circuit (City of St. Louis). Plaintiffs seek monetary damages for injuries they allegedly sustained as the result of the use of Mirena®, an intrauterine contraceptive system, designed, manufactured, marketed and sold by defendant Bayer Healthcare Pharmaceuticals, Inc. Plaintiffs assert claims based on strict liability, failure to warn and negligence.

On January 31, 2014, defendants removed the action to this Court, claiming jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Defendant is a citizen of Delaware and New Jersey. Plaintiffs are citizens of Tennessee, Delaware, Missouri, South Carolina, Alabama, Florida, Georgia, Kansas, New Mexico, Oregon, and Pennsylvania. In support of its removal petition, defendant asserted that the Court should disregard the Delaware citizenship of two of the plaintiffs--Pamela Barlow and

Roger Mullins--because they were fraudulently joined.[1] Plaintiffs seek remand, arguing that complete diversity is absent and that the removal was untimely. Defendants argue that this Court should stay the proceedings until the Judicial Panel on Multidistrict Litigation (JPML) rules on their motion to transfer this case to the MDL proceeding, In re: Miranda IUD Products Liability Litigation, MDL No. 2434.

II. Motion to Stay

"A putative transferor court need not automatically postpone rulings on pending motions, or in any way generally suspend proceedings, merely on grounds that an MDL transfer motion has been filed." Spears v. Fresenius Med. Care N. Am., Inc., 4:13-CV-855 CEJ, 2013 WL 2643302, at *1 (E.D. Mo. June 12, 2013) (citations omitted). "This is especially true where, as here, the pending motion is one for remand and goes to the Court's subject matter jurisdiction." Id. Waiting for a decision by the JPML before ruling on the motion to remand "would not promote the efficient administration of justice." Id. Accordingly, defendant's motion to stay will be denied.

III. Motion to Remand

A. Diversity Jursidiction

"A defendant may remove a state law claim to federal court only if the action originally could have been filed there." In re Prempro Products Liability Litigation, 591 F.3d 613, 619 (8th Cir. 2010) (citing Phipps v. FDIC, 417 F.3d 1006, 1010 (8th Cir. 2005)). The defendant bears the burden of establishing federal jurisdiction by a preponderance of the evidence. Altimore v. Mount Mercy College, 420 F.3d 763, 768 (8th Cir. 2005). "All doubts about federal jurisdiction should be resolved in favor of

---

[1]Barlow asserts a personal injury claim and Mullins asserts a derivative loss of consortium claim.

-2-

remand to state court." In re Prempro Products Liability Litigation, 591 F.3d at 620 (citing Wilkinson v. Shackelford, 478 F.3d 957, 963 (8th Cir. 2007)). A case must be remanded if, at any time, it appears that the district court lacks subject-matter jurisdiction. 28 U.S.C. § 1447(c); Fed. R. Civ. P. 12(h)(3).

Removal in this case was premised on diversity jurisdiction, which requires an amount in controversy greater than $75,000, exclusive of interest and costs, and complete diversity of citizenship among the litigants. 28 U.S.C. § 1332(a). "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." OnePoint Solutions, LLC v. Borchert, 486 F.3d 342, 346 (8th Cir. 2007).

The complete diversity rule is subject to two exceptions: (1) fraudulent joinder; and (2) fraudulent misjoinder. Witherspoon v. Bayer Healthcare Pharmaceuticals Inc., 2013 WL 6069009, *2 (E.D. Mo. Nov. 18, 2013). "Fraudulent joinder requires a showing that the claim involving nondiverse parties has 'no reasonable basis in fact and law.'" Id. (quoting Knudson v. Systs. Painters, Inc., 634 F.3d 968, 980 (8th Cir. 2011)). It must be "clear under governing state law that the complaint does not state a cause of action against the non-diverse defendant" and there is no "arguably [] reasonable basis for predicting that the state law might impose liability based upon the facts involved." Id. In contrast, fraudulent misjoinder, "a doctrine the Eighth Circuit has neither accepted nor rejected," "occurs when a claim involving nondiverse parties has no reasonable procedural basis, because the misjoined claim has no real connection with the controversy[.]" Id. (citations omitted).

Defendant argues that Delaware plaintiffs, Barlow and Mullins, were fraudulently joined and should not be considered for purposes of diversity because their claims are

time-barred under Delaware's two-year statute of limitations for personal injury actions. In support, defendant points to the fact that Barlow was diagnosed with her alleged injury in 2009 and the instant action was filed in 2013. The parties do not dispute that Delaware law applies to the statute of limitations issue.[2]

"It is well established that if it is clear under governing state law that the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained." Filla v. Norfork & Southern Ry., 336 F.3d 806, 810 (8th Cir. 2003) (citing Iowa Public Service Co. v. Medicine Coal Co., 556 F.2d 400, 406 (8th Cir. 1977)). "However, if there is a 'colorable' cause of action—that is, if the state law *might* impose liability on the resident defendant under the facts alleged—then there is no fraudulent joinder." Id.

Under Delaware law, "[n]o action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained[.]" Del. Code. Ann. Tit. 10, § 8119. However, the 2-year period may be tolled under Delaware's "time of discovery rule." McClements v. Kong, 820 A.2d 377, 380 (Del. Super. 2002). "If an injury is 'inherently unknowable' and a plaintiff is blamelessly ignorant of the wrong and injury complained of, the injury is sustained and the statute begins to run when the 'harmful effect first manifests itself and becomes physically ascertainable.'" Id. In other words, "the statute of limitations is tolled until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, his injury." Daniels v. Optek

---

[2] Plaintiffs' memorandum in support of the motion to remand assumes that Delaware law applies and plaintiffs do not argue the application of any other state law. [Doc. #12, ¶ 18].

Technology, Inc., 2012 Del. Super. LEXIS 250, *13 (Del. Super. 2012). "The standard is *inquiry* notice, not *actual* notice." Id. (emphasis in original). "[T]he Court must conduct a fact-intensive inquiry to determine whether a plaintiff was blamelessly ignorant of a potential claim or dilatory in pursing the action." Id. It is plaintiff's burden to "demonstrate that the statute of limitations should be tolled." Burrell v. Astrazeneca LP, 2010 WL 3706584, *4 (Del. Super. 2010).

Plaintiffs argue that the time of discovery rule applies in the instant case because, although physicians removed Barlow's Mirena IUD in 2009, her doctors did not attribute her medical issues to the device and she did not know of the association until she saw an advertisement by a law firm pursuing Mirena IUD cases in January of 2013. In response, defendants argue that the removal of Barlow's Mirena IUD in 2009 put her on actual notice of her injuries and that she was also on inquiry notice because publicly available Mirena labels from 2008 and 2009 warned about the same type of injury plaintiff alleges to have suffered.

After an intensive review of the facts and Delaware law, the Court finds that Barlow and Mullins have not raised a colorable cause of action. While Barlow is correct in arguing that her medical records regarding the removal of her Mirena IUD reflect that her physicians did not attribute her injuries to the device, this does not mean that she did not have the responsibility to personally investigate the source of her injuries. See Barlow's Feb. 2009 Medical Records, Doc. #14, Ex. C. Delaware law requires that injured parties investigate their claims in order to determine why they were injured. Krug v. Beebe Medical Ctr., 2003 WL 22410777, *1 (Del. Super. 2003); Duncan v. O.A. Newton & Sons Co., 2006 WL 2329378, *8 (Del. Super 2006) ("Time of discovery

does not mean that the statute of limitations does not run until [p]laintiff is told by her doctor . . . that she has a cause of action.").

For instance, in McClements v. Kong, 820 A.2d 377 (Del. Super. 2002), plaintiff was placed on a backboard and underwent a CT scan, which revealed a hematoma. Plaintiff's neurosurgeon performed a craniotomy, but a hematoma was not found. Id. at 379. The neurologist contacted the manufacturer of the CT machine and learned that placing a patient on a backboard could cause false-positives. Id. Shortly thereafter, the neurologist informed plaintiff that the craniotomy was unnecessary and attributed the mistake to a shadow on the film. Id. The neurologist did not inform plaintiff of the information he learned from the manufacturer. Id. Plaintiff timely filed suit against the doctor. Id. During depositions, plaintiff learned that the CT machine may have been the cause of his injury. Id. at 380. Plaintiff filed suit against the manufacturer, who raised a statute of limitations defense. Id. The court in McClements agreed with the manufacturer and held that "the plaintiff's injury—a needless craniotomy—was known to the plaintiff shortly after the procedure" and, thus, his claim against the manufacturer was time-barred. Id. The court explained:

> Once the plaintiff is aware of an injury, whether because the injury was known from the outset, or, if it was inherently unknowable, because the harmful effect has manifested itself and became physically ascertainable, the statute begins to run and continues to run even though the plaintiff may not be aware of any causal connection between the injury and the conduct of a particular potential defendant.

Id.

McClements is similar to the instant case because the harmful effect of Barlow's injury became physically ascertainable in February 2009 when she underwent a surgical removal of her IUD as the result of pelvic pain. Therefore, despite having no

actual knowledge that her injuries were caused by the Mirena IUD, the statute of limitations began to run.

Barlow attempts to bypass the 2-year statute of limitations by arguing that she was not on notice of her claims against defendant until after she saw an advertisement for Mirena IUD litigation. This argument fails. In <u>Burrell v. Astrazeneca LP</u>, 2010 WL 3706584 (Del. Super. 2010), the plaintiffs similarly argued that they did not have notice until encountering a law firm's advertisement. The court in <u>Burrell</u> rejected this argument and held that plaintiffs were on inquiry notice because information linking the drug to plaintiffs' specific injuries was publically available. <u>Id.</u> at 6. The court reasoned that "[h]ad [p]laintiffs engaged in a reasonable investigation of publically available sources . . . each of them would have discovered facts that would have provided notice of a *potential* (as opposed to a guaranteed) tort claim[.]" <u>Id.</u> (citation omitted) (emphasis in original). Following this reasoning, had Barlow engaged in a reasonable inquiry of publically available information regarding the Mirena IUD, she would have discovered product labels specifically warning of the injuries she alleged in the instant complaint. <u>See</u> <u>e.g.</u> Mirena IUD Product Labels, Doc. #18-1, pp. 6-7 (warning of the risk of perforation and bleeding); Doc. #18-2, pp. 7-12 (same).

The instant case is distinguishable from toxic tort asbestos cases where Delaware courts have held that in the absence of medical diagnostic support plaintiffs are not bound by the 2-year statutory period. <u>See</u> <u>e.g.</u> <u>re Asbestos Litigation</u>, 673 A.2d 159, 164 (Del. Sup. Ct. 1996); <u>Brown v. E.I. duPont de Nemours and Company</u>, Inc., 820 A.2d 362 (Del. Sup. Ct. 2003). Such cases are distinguishable because medical support linking plaintiffs' injuries to the exposure of asbestos was not publically available by any means. In fact, the cause of plaintiffs injuries could not even be

ascertained by the medical field as plaintiffs' doctors repeatedly stated that the cause of their injuries was entirely unknown. See Brown, 820 A.2d at 365. In contrast, Barlow could have diligently performed research and discovered her potential claim.

Accordingly, the Court finds that Delaware's time of discovery rule does not apply to toll the statute of limitations in this case. Thus, the joinder of Barlow and Mullins is fraudulent and their citizenship will not defeat diversity jurisdiction. In light of this conclusion, it is unnecessary to address defendant's fraudulent misjoinder and permissive joinder arguments.

### B. Timeliness of Removal

Plaintiffs additionally argue that the removal of this case was untimely and should be remanded because defendant did not remove within 30 days after ascertaining that this case was removable. 28 U.S.C. § 1446(b) states, in pertinent part:

> (1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]
>
> . . .
>
> (3) [I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

This action was initiated in state court on February 5, 2013 and service on defendant was achieved on April 2, 2013 [Doc. # 1-7, p. 2]. The case was not removed to this court until January 31, 2014. Defendant states that it was unable to remove the action within 30 days being served because it did not know at that time whether the amount in controversy requirement for diversity jurisdiction was met. In

support, defendant points to plaintiffs' complaint, which contains a prayer for damages in "a sum in excess of $25,000." [Doc. #5, pp. 24]. In reply, plaintiffs dispute defendant's claim of lack of knowledge, pointing to the defendant's contradictory statement in its notice of removal: "Plaintiffs seek both compensatory and punitive damages. Therefore, it is facially apparent from the Complaint that the amount of Plaintiffs [sic] claim exceeds $75,000." [Doc. #1, p. 7].

The timing of the removal, while relevant, is not as important as the jurisdictional issue. Here, the Court finds that the removal was improper because "[d]efendant has come forward with no evidence, either through a settlement demand or discovery responses, that would indicate that the amount in controversy exceeds $75,000." Walton v. Lilyhorn, 4:11-CV-509-CDP (E.D. Mo. Apr. 21, 2011) (citing In re Business Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir. 1993)) (The party seeking removal and opposing remand has the burden of establishing that all prerequisites to jurisdiction have been satisfied); Smith v. Dial Corp., 4:12-CV-1630-RWS (E.D. Mo. Sept. 13, 2012) (defendant must bring evidence that the amount in controversy meets the $75,000 jurisdictional requirement).

Defendant admits that "[t]he Petition does not explicitly disclose an amount in controversy of at least $75,000, *nor does any pleading or other paper served in this case.*" Doc. #18, at 14 (emphasis added). Furthermore, defendant does not submit any evidence showing that the jurisdictional amount in controversy requirement has been met in this case. Thus, defendant has failed to establish federal jurisdiction by a preponderance of the evidence. See Altimore, 420 F.3d at 768; 28 U.S.C. § 1332(a). Defendant's bare assertion that it is "facially apparent in the Complaint" that the amount in controversy exceeds $75,000 is not sufficient to establish that the

jurisdictional amount has been met. See Levinson v. Cincinnati Ins. Co., 4:13-CV1595-CAS (E.D. Mo. Sept. 26, 2013) ("Missouri state court petitions . . . which seek an unspecified amount of damages, do not establish damages in excess of the jurisdictional amount and do not start the thirty-day time limit for removal.").

Defendant argues that it was not required "to wait until Plaintiffs finally have to admit an amount in controversy, either in their expert disclosures or possibly even on the eve of trial, to remove this action." [Doc. #18 at p. 15]. In support of this argument, defendant cites to Miller v. Cottrell, Inc., 2006 WL 1313367 (W.D. Mo. May 12, 2006), in which the court held that a defendant's notice of removal was not premature even though it was filed before the defendant was served with process. In reaching its decision, the court reasoned that "[a]s a practical matter, there is [] no reason to find that the Notice was premature because [the defendant] has now entered an appearance, and it would merely be a matter of litigation gymnastics to return the case to state court, only to have it removed again." Id. at *3.

The defendant's reliance on Miller is misplaced. Miller involved the question of whether a defendant could remove an action prior to being formally served with the complaint. In contrast, the defendant here is attempting to remove this case without first establishing that the amount in controversy satisfies the requirement for diversity jurisdiction. Nothing in the Miller decision can be construed as exempting a removing defendant from the obligation to establish federal court jurisdiction.

\* \* \*

For the reasons discussed above,

**IT IS HEREBY ORDERED** that plaintiffs' motion to remand this action [Doc. #18] is **granted**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall remand this action to the Twenty-Second Judicial Circuit Court of Missouri (City of St. Louis) from which it was removed.

**IT IS FURTHER ORDERED** that defendants' motion to stay proceedings pending the decision of the Judicial Panel on Multidistrict Litigation [Doc. #4] is **denied**.

**IT IS FURTHER ORDERED** that plaintiffs' motion for an expedited ruling [Doc. #16] is **granted** and plaintiffs' motion for a hearing [Doc. #16] is **denied**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 20th day of February, 2014.